UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALFONSO SOLANO-VILLA,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ, *et al.*,<br>Respondents. | Case No. C26-3557-SKV<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Alfonso Solano-Villa is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that his arrest and detention violate the Immigration and Nationality Act ("INA") and its implementing regulations, as well as the Due Process Clause of the Fifth Amendment. *See* Dkt. 1. He seeks immediate release from custody. *See id.* at 15. Respondents filed a return, Dkt. 5, together with the supporting declarations of ICE Deportation Officer Nhat Truong, Dkt. 6, and Respondents' counsel Peter H. Clark, Dkt. 7. Petitioner filed a traverse in reply. Dkt. 8.

The Court, having reviewed the parties' submissions and the governing law, finds that Respondents' arrest and detention of Petitioner violated his constitutional right to due process. Accordingly, the Court GRANTS Petitioner's federal habeas petition and ORDERS that he be released from detention within 24 hours.

## I. BACKGROUND

Petitioner is a native and citizen of Mexico who first entered the United States in approximately January 2001. Dkt. 1, ¶ 12. In November 2002, Petitioner was issued an H2B temporary work visa, which expired in September 2003. Dkt. 6, ¶ 5. In May 2005, United States Border Patrol ("USBP") encountered Petitioner near Burlington, Washington, and he admitted he did not have proper immigration documents and had entered the United States unlawfully in 2001.[1] Dkt. 6, ¶ 6; Dkt. 7, Ex. 1. Petitioner requested a voluntary return to Mexico, and he was transferred to NWIPC to facilitate that return. *Id.* In June 2005, ICE's Office of Enforcement and Removal Operations ("ERO") returned Petitioner to Mexico. Dkt. 6, ¶ 7; Dkt. 7, Ex. 2. Petitioner subsequently re-entered the United States, but it is not known when or where this occurred. Dkt. 6, ¶ 4.

Petitioner reports that in 2010, he was arrested and charged with DUI. Dkt. 1, ¶¶ 2, 12. According to Petitioner, he was not required to spend any time in jail; he simply paid a fine and the case was closed. *Id.* Respondents' administrative records reflect that they found no criminal history for Petitioner during records checks following his recent arrest. *See* Dkt. 7, Ex. 3 at 3.

Although the exact date Petitioner re-entered the United States is unclear, he asserts he has lived in Mount Vernon, Washington, for over 20 years and has stable employment. Dkt. 1, ¶ 13. Petitioner lives with and supports his family, which includes three U.S. citizen children.

---

[1] Petitioner was at that time going by the name Alonso Soler-Tapias. *See* Dkt. 6, ¶ 6; Dkt. 7, Ex. 1.

*Id.*, ¶¶ 12-14. On August 4, 2026, Petitioner was a passenger in a car traveling to work with several co-workers. *Id.*, ¶ 16. The driver of the vehicle was the subject of an ICE arrest warrant and the target of an ICE enforcement operation being conducted on that day. *Id.*; Dkt. 7, Ex. 3 at 2. When the vehicle arrived at Petitioner's place of work in Bellingham, Washington, it was surrounded by ICE vehicles and members of the arrest team approached the vehicle and arrested the driver. Dkt. 1, ¶ 17; Dkt. 7, Ex. 3 at 2.

Petitioner was asked by the arrest team to provide identification, which he did in the form of a Washington State Identification Card. Dkt. 7, Ex. 3 at 2. Subsequent Department of Homeland Security ("DHS") database inquiries revealed Petitioner had no legal status in the United States and no pending applications for relief with United States Citizenship and Immigration Services. *Id.* According to Respondents' documentation, the arrest team also questioned Petitioner about his immigration status, and he confirmed that he was in the United States illegally. *Id.* Based on this information, the arrest team obtained a warrant for Petitioner's arrest, and he was then asked to exit the vehicle and was placed in handcuffs. *Id.*

Officer Truong avers that on the day of Petitioner's arrest, ERO issued him a Form I-826 Notice of Rights and Request for Disposition and he accepted voluntary departure to Mexico. Dkt. 6, ¶ 9. Respondents, however, did not provide a copy of that form for the Court's review. The Form I-213 Record of Deportable/Inadmissible [Noncitizen] prepared on the day of Petitioner's arrest indicates that the arrest team offered him a voluntary departure and he accepted. Dkt. 7, Ex. 3 at 4. Following processing, Petitioner was transferred to NWIPC where he remains detained. Dkt. 6, ¶ 9. On August 7, 2026, three days after his arrest, ERO removed Petitioner from his return flight to Mexico after he indicated he wanted to withdraw his request for voluntary departure. *Id.* ¶ 10.

On August 20, 2026, Petitioner was placed in removal proceedings and served with a Notice to Appear ("NTA") charging him as removable because he was present in the United States without having been admitted or paroled. Dkt. 6, ¶ 11; Dkt. 7, Ex. 5. Petitioner attended master calendar hearings at the Tacoma immigration court on September 2, 2026, September 21, 2026, and October 5, 2026. Dkt. 6, ¶¶ 12-13, 15. On September 29, 2026, DHS filed a Form I-261 Additional Charges of Inadmissibility/Deportability, which sets forth the same charge of removability as appeared in the NTA, but added Petitioner's alias, Alonso Soler-Tapias, and amended the date, place, and location of his entry to "unknown." *Id.* ¶ 14; Dkt. 7, Ex. 6. Petitioner was scheduled for another hearing in the Tacoma immigration court on October 26, 2026. Dkt. 6, ¶¶ 15-16. The outcome of that hearing is not known.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner raises three causes of action: (1) Respondents violated the INA and implementing regulations when ICE arrested Petitioner without having reason to believe that he was in the United States unlawfully and that he was likely to escape before a warrant could be obtained; (2) Respondents violated Petitioner's right to procedural due process when they failed to provide him a hearing prior to his arrest to determine whether he is a danger to the community or a flight risk; and (3) Petitioner's continued detention serves no valid regulatory purpose and therefore violates substantive due process. Dkt. 1, ¶¶ 42-50.

Respondents argue in their return that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1226(a), which they maintain provides extensive procedural protections. Respondents contend that "[e]very [noncitizen] apprehended under Section 1226(a) is individually considered for release on bond." Dkt. 5 at 4 (citing 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(c)(8)). Respondents assert that the immigration court will conduct a bond redetermination hearing when requested by a noncitizen, but emphasize that Petitioner has not alleged he has requested such a hearing. *Id.* at 5. Respondents thus argue that Petitioner has not demonstrated his detention violates due process. *Id.*

### A. Statutory Basis for Detention

There is no dispute that Petitioner is currently detained under 8 U.S.C. § 1226(a). Section 1226(a) grants the government the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory. 8 U.S.C. § 1226. When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an

initial custody determination. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an immigration judge. 8 C.F.R. § 236.1(d)(1).

At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the immigration judge that he warrants release on bond. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). In making a bond decision under § 1226(a), an immigration judge must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id*. (citing *In re Patel*, 15 I. & N. Dec. 666 (BIA 1976)). If the immigration judge denies bond, the detainee may appeal to the Board of Immigration Appeals ("BIA"). 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3)(i). A noncitizen who remains detained following an immigration judge's initial bond redetermination may request a subsequent bond redetermination whenever the noncitizen's "circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

**B. Due Process**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07

(9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). The Court applies the *Mathews* test below.

The Court first considers Petitioner's private interest. The private interest at stake here is freedom from detention, a liberty interest that "lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The Supreme Court has consistently recognized the significance of an individual's interest in freedom from detention, *see Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *Hamdi*, 542 U.S. at 529 (the interest in not being detained "is the most elemental of liberty interests"). However, it has also recognized that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Petitioner argues that his interest in freedom from physical confinement is extremely high as he has been living at liberty in the United States for over twenty years, he has a stable job, and he supports a family, including his three U.S. citizen children. Dkt. 1, ¶¶ 29-30. Respondents acknowledge in their return the "weighty liberty interests implicated by the Government's detention of noncitizens." Dkt. 5 at 5 (quoting *Reyes v. King*, 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021)). They argue, however, that Petitioner's liberty interest was significantly diminished because he was first encountered in the interior of the country after entering without inspection, and "there was process available to him following his detention." *Id*. (quoting *Reyes-Lopez v. Mullin*, 2026 WL 2168047, at *4 (W.D. Wash. July 28, 2026)).

In *Reyes-Lopez*, the court concluded that the petitioner, who was similarly detained pursuant to § 1226(a), had a diminished liberty interest because he had lived in the United States unlawfully for over six years after being lawfully admitted for a period of time, he had not

applied for lawful status during that time, he had been provided an initial custody determination by ICE, and he had a right to seek review by an immigration judge of which he had not availed himself. 2026 WL 2168047, at *4. While the circumstances here are similar to those in *Reyes-Lopez*, they are not identical. In particular, there is an absence of evidence in the record that Petitioner was ever provided an initial custody determination as ICE regulations require, which was provided in *Reyes-Lopez*. Moreover, even assuming Petitioner's liberty interest is reduced because of the absence of any lawful status in this country over the past twenty years, he still retains a basic interest in being free from detention and, thus, the first *Mathews* factor weigh in his favor.

The Court next considers the risk of an erroneous deprivation and the value of additional safeguards. Petitioner argues that the risk of an erroneous deprivation was high here as the arrest procedures employed by ICE deprived him of an individualized custody determination assessing his potential danger to the community and risk of flight prior to his arrest and detention. *See* Dkt. 1, ¶¶ 31-32; Dkt. 8 at 9-10. Respondents argue in response that Petitioner is in active removal proceedings and therefore may seek a hearing before an immigration judge at which his flight risk and danger to the community may be assessed, but he has not availed himself of this opportunity. Dkt. 5 at 6. Respondents also suggest that the various procedures available under § 1226(a) to obtain review of initial bond decisions and to seek subsequent custody redeterminations based on changed circumstances mitigate Petitioner's risk of unreasonably prolonged detention. *Id.*

As noted above, there is no evidence in the record that petitioner ever received the initial custody determination he was entitled to under 8 C.F.R. § 236.1(c)(8), nor any opportunity, contemporaneous with his arrest, to request a custody redetermination hearing before an

immigration judge as Respondents now suggest he could do. It is conceivable that the absence of an initial custody determination could be attributable to the fact that Petitioner, at the time he was processed following his arrest, requested voluntary return to Mexico, before changing his mind and withdrawing the request three days later. *See* Dkt. 6, ¶¶ 9-10; Dkt. 7, Ex. 3 at 3-4. However, aside from noting these events, Respondents offer no explanation of how, if at all, these events may have impacted the manner in which Petitioner was processed following his arrest, including the availability of any initial custody determination. Assuming that Petitioner may now seek a hearing, as Respondents suggest, despite the apparent absence of an initial custody determination, this does not mitigate the initial deprivation of process that occurred immediately following Petitioner's arrest. Moreover, while there are ample procedures available to individuals detained under § 1226(a) to seek review of their custody, ICE was required to initiate this process at the outset by conducting an initial custody review, which they failed to do. The second *Mathews* factor thus weighs in Petitioner's favor as well.

Finally, the Court considers the Government's countervailing interests. There is no question that the Government has legitimate interests in enforcing immigration laws, protecting the community, ensuring a noncitizen's appearance for immigration proceedings, and effectuating removal orders. However, the Government has no legitimate interest in doing so without following its own regulations which, as explained above, is what occurred here. The third *Mathews* factor therefore weighs in Petitioner's favor.

In sum, all three *Mathews* factors favor Petitioner. Habeas relief is therefore warranted. Given the lack of lawful process at the outset, release is the appropriate, constitutionally required

remedy.[2] *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's habeas petition (Dkt. 1) and ORDERS that he be RELEASED from immigration detention within 24 hours on conditions consistent with federal law and regulations. Respondents shall file a notice with the Court within 48 hours that Petitioner has been released. Petitioner's remaining claims (First and Third Causes of Action) are DENIED as moot. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED this 30th day of October, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

[2] Because the Court concludes Petitioner is entitled to relief with respect to his procedural due process claim, the Court does not reach Petitioner's remaining claims.